**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

HELLS CANYON PRESERVATION
COUNCIL, an Oregon non-profit
corporation; and THE WILDERNESS
SOCIETY,
     *Plaintiffs-Appellants,*

v.

UNITED STATES FOREST SERVICE, an
agency of the United States
Department of Agriculture,
     *Defendant-Appellee.*

No. 07-35456
D.C. No.
CV-02-01138-HA
OPINION

Appeal from the United States District Court
for the District of Oregon
Ancer L. Haggerty, District Judge, Presiding

Argued and Submitted
December 11, 2008—Portland, Oregon

Filed January 25, 2010

Before: Diarmuid F. O'Scannlain, Susan P. Graber, and
Jay S. Bybee, Circuit Judges.

Opinion by Judge Bybee;
Partial Concurrence and Partial Dissent by Judge Graber

Case 3:02-cv-01138-HA   Document 110   Filed 01/25/10   Page 2 of 20
Case: 07-35456   01/25/2010   Page: 2 of 20   ID: 7205895   DktEntry: 39-1

1400        HELLS CANYON PRESERVATION COUNCIL v. USFS

## COUNSEL

Brett E. Brownscombe (argued), Portland, Oregon; William H. Sherlock, Hutchinson, Cox, Coons, Dupriest, Orr & Sherlock, P.C., Eugene, Oregon, for the plaintiffs-appellants.

Mark R. Haag, United States Department of Justice, Washington, D.C., for the defendant-appellee.

## OPINION

BYBEE, Circuit Judge:

Plaintiffs-Appellants Hells Canyon Preservation Council and The Wilderness Society (collectively, "HCPC" or "plaintiffs") brought suit against the United States Forest Service ("Forest Service" or "Service"), seeking a judgment declaring: (1) that the Forest Service has failed to retain the original map of the Wilderness in violation of the Hells Canyon National Recreation Area Act, 16 U.S.C. § 460gg(b); (2) that the Forest Service's description of the wilderness boundary is arbitrary and capricious in violation of 5 U.S.C. § 706(2)(A); and (3) that the Forest Service's failure to close the Lord Flat

HELLS CANYON PRESERVATION COUNCIL v. USFS     1401

Trail to motorized vehicle use is an "agency action unlawfully withheld or unreasonably delayed" under 5 U.S.C. § 706(1). Plaintiffs also seek an injunction to close the Lord Flat Trail to motorized vehicle use. The district court held that each of plaintiffs' claims was barred by the Administrative Procedure Act's ("APA's") six-year statute of limitations. Although we rely on different reasoning, we affirm the judgment of the district court.

I

Stretching across 214,944 acres, the Hells Canyon Wilderness straddles the state boundary between Oregon and Idaho. The Snake River winds along the same boundary, creating two distinct regions of the Wilderness: one side, in Idaho, consists of towering peaks and rock-faced slopes; the other side, slightly larger, in Oregon, exhibits expanses of grassland dotted with Douglas fir trees and free-flowing creeks.[1]

"To assure that the natural beauty and historical and archeological values of the Hells Canyon area . . . are preserved for this and future generations," Congress passed the Hells Canyon National Recreation Area Act ("Hells Canyon Act" or "Act") in 1975. Pub. L. No. 94-199, 89 Stat. 1117 (1975) (codified at 16 U.S.C. §§ 460gg-460gg-13). The Act established the Hells Canyon National Recreation Area ("Hells Canyon Area"), *id.* § 460gg(a), and designated the Hells Canyon Wilderness, located within the Hells Canyon Area, *id.* § 460gg-1(a), as wilderness. As a congressionally designated wilderness area, Hells Canyon Wilderness is governed by both the Hells Canyon Act and the Wilderness Act, 16 U.S.C. §§ 1131-1136, whichever is more restrictive, *id.* § 460gg-1(b). With respect to motorized vehicles, the Wilderness Act is more restrictive because it prohibits the "use of motorized vehicles" within designated wilderness areas "except as nec-

---

[1]See   http://www.fs.fed.us/hellscanyon/things_to_see_and_do/hells_canyon_wilderness/ (last visited Dec. 1, 2009).

1402    HELLS CANYON PRESERVATION COUNCIL v. USFS

essary to meet minimum requirements for the administration of the area." *Id.* § 1133(c).

Congress identified two sources to define the contours of the Hells Canyon Area: a map and a boundary description. The map, created by the Forest Service in May 1978, was titled the "Hells Canyon National Recreation Area." 16 U.S.C. § 460gg(b). The Act requires that the map "be on file and available for public inspection in the office of the Chief, Forest Service, United States Department of Agriculture." *Id.* In addition, Congress instructed the Secretary of Agriculture to "publish a detailed boundary description of the recreation area," including the Hells Canyon Wilderness. *Id.* In 1978, the Secretary complied by preparing a metes-and-bounds boundary description and inviting public comment. In 1981, the Forest Service published final notice of the boundary description in the Federal Register but, "[i]n the interests of economy," did not publish either the full metes-and-bounds description or the map in the Federal Register. 46 Fed. Reg. 34,611-02, 34,611 (July 2, 1981). Instead, the boundary description was made available for review at the Forest Service in Washington, D.C., and at Regional Forester offices in Idaho, Montana, Oregon, and Utah, and the boundary description and map were lodged with committees in the House of Representatives and the Senate.

Although it has been almost thirty years since the Forest Service published the map and the boundary description, there continues to be controversy regarding the precise location of the Hells Canyon Wilderness boundary and, in particular, its western boundary. In general, the boundary description locates the Wilderness boundary by reference to specific map coordinates and to topographic descriptors such as "ridge," "hydrologic divide,"[2] and "rim." The 1978 public notice

---

[2] A hydrologic divide is "the boundary line along a topographic ridge or high point which separates two adjacent drainage basins." Water Words Dictionary, Nevada Division of Water Resources 89 (2009), *available at* http://water.nv.gov/WaterPlanning/dict-1/PDFs/wwords-d.pdf. (under "Divide") (last visited Dec. 1, 2009).

HELLS CANYON PRESERVATION COUNCIL v. USFS    1403

regarding the proposed boundary explained that "[t]he established Hells Canyon Wilderness boundary has been located on the most identifiable feature of the canyon rim. In some cases this is the rim and in other cases it is the crest of a hill." The description frequently refers to the western boundary as the "east rim of Summit Ridge." In 1994, a registered land surveyor advised the Forest Service that the "east rim of the ridge" was not a precise definition "because the position of the rim varies with respect to the topography of the ridge." He indicated that the terms "hydrologic divide" and "rim" were, in this context, "mutually exclusive." The surveyor explained that the features might but would not necessarily run parallel:

> The hydrologic divide is the line defined by the highest elevation points along the divide. The rim is interpreted as a topographic feature below the hydrologic divide where the downward slope of the divide increases significantly in comparison to the downward slope between the rim and the divide. At points along the hydrologic divide the initial downward slope may be steep enough that the rim is congruous with the divide.

The surveyor concluded that "references [in the description] to the rim are not synonymous with references to the hydrologic divide."

Running along the western boundary of Hells Canyon Wilderness is a fifteen-mile man-made unpaved road known as the Lord Flat Trail. The Trail, originally created in 1960 to help fight a forest fire, is an unmarked travelway located on the Lord Flat Plateau, west of—and generally parallel to—the Snake River. Commencing at Warnock Corral, the Trail moves north, crossing the hydrologic divide between the Snake River and the Inmaha River drainages several times before terminating at the Lord Flat landing strip. The Trail is suitable for four-wheel drive vehicles only.

1404    HELLS CANYON PRESERVATION COUNCIL v. USFS

In 1989, the U.S. Forest Service discovered that a 1.5-mile stretch of the Trail traversed the western boundary of the Hells Canyon Wilderness. Upon making this discovery, the Forest Service temporarily banned motorized vehicle use on the Trail. After soliciting advice from a number of sources, the Forest Service decided, in 1992, to relocate the offending 1.5-mile part of the Trail outside the Wilderness area and publicly issued a Decision Memo to that effect.[3] The Memo described the relocation of the Trail as a "minor realignment" and indicated that the entire length of the Trail—which, as a result of the Forest Service's decision, now fell completely outside the Wilderness—would be reopened for motorized use. The Forest Service based its decision in part on the Hells Canyon Act, which it read to provide that "the immediate wilderness boundary along the western side of Hells Canyon would be the canyon rim." It also indicated that its plan was consistent with Congress's intent to "provid[e] access to scenic views from the Western rim of Hells Canyon." 16 U.S.C. § 460gg-5(c).

After learning of the Lord Flat Trail's relocation, HCPC brought suit in 1994, alleging that the Forest Service had violated the National Environmental Policy Act of 1969 ("NEPA"), 42 U.S.C. §§ 4321-4347, by failing to file an environmental impact statement when it relocated the portion of the Trail. HCPC's suit also alleged that, even after the relocation, other parts of the Trail remained within the Hells Canyon Wilderness and that, consequently, motorized vehicle access to the Trail violated the Wilderness Act. *See Hells Canyon Pres. Council v. U.S. Forest Serv.* ("*HCPC I*"), 883 F. Supp. 534, 535 (D. Or. 1995).

HCPC's Wilderness Act claim in *HCPC I* was based on a

---

[3]The Forest Service ordered that the wilderness-traversing 1.5 mile portion of the Trail be blocked off with logs and seeded with grass, and an entirely new section of the Trail—this one outside the wilderness boundary—constructed.

HELLS CANYON PRESERVATION COUNCIL v. USFS      1405

"Forest Service transportation system map," showing a half-mile area in which the Trail appeared to cross the Wilderness boundary. In response to HCPC's summary judgment motion, the Forest Service asserted that the map upon which HCPC relied to bolster its claim was "incorrect." During oral argument before the district court on the parties' cross-motions for summary judgment, HCPC voluntarily abandoned its Wilderness Act claim. The district court, after rejecting HCPC's NEPA claim on the merits, dismissed the cross-motions for summary judgment on the Wilderness Act claim as moot. *See HCPC I*, 883 F. Supp. at 539.

Seven years later, in 2002, HCPC staff again voiced HCPC's concerns about motorized vehicle access to the Trail and met with the Forest Service to document the places where the Trail purportedly crossed the hydrologic divide. The Service responded that at the documented points the hydrologic divide did not establish the Hells Canyon Wilderness boundary. Rather, the Service explained, at those points the rim marked the boundary, leaving the Trail entirely outside the wilderness area. As a result, the Forest Service observed, motorized vehicle use on the Trail did not violate the Wilderness Act.

HCPC then brought the present suit, alleging violations of the Hells Canyon Act, the APA, and the Wilderness Act. Specifically, HCPC alleged that (1) the Forest Service violated the Hells Canyon Act by failing to produce or otherwise provide the original 1978 map, which the statute requires be on file in the Forest Service Chief's office; (2) the Forest Service violated the APA because its determination that the western boundary of the Wilderness followed the rim rather than the hydrologic divide is arbitrary and capricious; and (3) the Forest Service continues to violate the Wilderness Act by allowing motorized vehicle use on the Trail, portions of which lie in the Hells Canyon Wilderness. The Forest Service argued that HCPC's claims were barred by the statute of limitations or the doctrines of claim preclusion and standing.

In an unpublished order, the district court dismissed the suit, ruling that claim preclusion barred each of the claims. The court held that all of HCPC's claims either were or could have been raised in the *HCPC I* litigation, and that final judgment in that case therefore precluded re-litigation of those claims. HCPC appealed that ruling and we reversed, holding that HCPC's voluntary withdrawal of the Wilderness Act claim in *HCPC I* did not result in a final judgment on the merits of that claim. *Hells Canyon Pres. Council v. U.S. Forest Serv.* ("*HCPC II*"), 403 F.3d 683, 691 (9th Cir. 2005). We declined to reach the issues of timeliness and standing, and remanded those issues for the district court's consideration. *Id.*

On remand, the Forest Service renewed its arguments that plaintiffs lacked standing and that their claims were time-barred. The district court granted the Forest Service's motion and denied plaintiffs' cross-motion for summary judgment, holding that the APA's six-year statute of limitations barred each of plaintiffs' claims. 28 U.S.C. § 2401(a).

II

As neither the Hells Canyon Act nor the Wilderness Act provides a private right of action, plaintiffs' claims arise under the APA. *See* 5 U.S.C. § 702. We review a district court's grant of summary judgment *de novo*, *Nolan v. Heald Coll.*, 551 F.3d 1148, 1153 (9th Cir. 2009), and may affirm "on any basis supported by the record," *Satey v. JPMorgan Chase & Co.*, 521 F.3d 1087, 1091 (9th Cir. 2008) (internal quotation marks omitted). We discuss each claim in turn.

A

HCPC alleges that the Forest Service violated the Hells Canyon Act by failing "to maintain th[e] 1978 map or its 1975 predecessor on file at the Forest Service Chief's office in Washington D.C. or anywhere else to allow for public

Case 3:02-cv-01138-HA Document 110 Filed 01/25/10 Page 9 of 20
Case: 07-35456 01/25/2010 Page: 9 of 20 ID: 7205895 DktEntry: 39-1

Hells Canyon Preservation Council v. USFS 1407

inspection," in violation of 16 U.S.C. § 460gg(b). Plaintiffs argue that this failure constitutes an "agency action unlawfully withheld or unreasonably delayed" under the APA. *See* 5 U.S.C. § 706(1). The district court held that failing to maintain the map could not constitute final agency action and that "plaintiffs' reliance on the loss of the map for statute of limitation purposes is untenable." On appeal, the Forest Service expressly abandons its argument that the map claim is time-barred, contending instead that we should affirm the district court on the basis that plaintiffs do not have standing. "Standing is a question of law that we review de novo." *Wilson v. Kayo Oil Co.*, 563 F.3d 979, 980 (9th Cir. 2009) (per curiam) (internal quotation marks omitted).

[1] We do not think that the question of plaintiffs' standing to challenge the filing of the 1978 map is a difficult one. "[T]he irreducible constitutional minimum of standing" requires, among other things, an injury in fact suffered by the plaintiff and a likelihood that a favorable decision will redress the injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). HCPC, on whom the burden of establishing standing rests, *see id.* at 561, has shown neither.

[2] The Hells Canyon Act requires that the 1978 map of the Hells Canyon National Recreation area "be on file and available for public inspection in the office of the Chief, Forest Service, United States Department of Agriculture." 16 U.S.C. § 460gg(b). The Forest Service concedes, and everyone agrees, that the original 1978 map has long been lost. According to plaintiffs, their injury stems from the fact that the map is not available "for public inspection" as the statute requires. But the Forest Service has already addressed this injury by making *copies* of the map available, and plaintiffs have made no effort to show the harm that results from reviewing a copy of the map rather than the original. What remains is plaintiffs' general displeasure with the Forest Service's failure to comply with its statutory duties, but their desire to see "the Nation's laws . . . faithfully enforced" is not enough to estab-

Case 3:02-cv-01138-HA   Document 110   Filed 01/25/10   Page 10 of 20
Case: 07-35456   01/25/2010   Page: 10 of 20   ID: 7205895   DktEntry: 39-1

1408    HELLS CANYON PRESERVATION COUNCIL v. USFS

lish injury under Article III. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998).

**[3]** Uncertainty as to plaintiffs' precise injury also eliminates any possibility that a judgment of this court might redress that injury. The original map is lost, and no remedy we can prescribe can alter that fact. Plaintiffs seek a declaratory judgment but as there is "no controversy over whether [the Forest Service violated the statute], the declaratory judgment is not only worthless to [plaintiffs], it is seemingly worthless to all the world." *Id.* at 106. Because plaintiffs have not suffered a cognizable Article III injury, and redressability is at best unlikely, we affirm the district court's dismissal of the map claim on the ground that plaintiffs lack standing.

B

Plaintiffs also contend that the Forest Service's determination of the Hells Canyon wilderness boundary as "anything other than the hydrological divide" is arbitrary and capricious in violation of the APA. They bring a claim under § 706(2) of the statute, arguing that the Forest Service's interpretation of the boundary "is inconsistent with congressional intent and the agency's own documentary records." The district court found this claim barred by the relevant statute of limitations because, in the district court's view, plaintiffs' claim accrued in 1981 upon publication of the boundary description. We review *de novo* whether the district court applied the statute of limitations correctly. *Lukovsky v. City of San Francisco*, 535 F.3d 1044, 1047 (9th Cir. 2008), *cert. denied*, 129 S. Ct. 1997 (2009). "The question of when a claim accrues," however, "is a fact-intensive inquiry, and . . . a district court's factual finding concerning when a claim accrues is entitled to deferential review." *HCPC II*, 403 F.3d at 691.

**[4]** APA claims are subject to a six-year statute of limitations. *See* 28 U.S.C. § 2401(a); *Wind River Mining Corp. v. United States*, 946 F.2d 710, 712-13 (9th Cir. 1991). To bring

a claim under 5 U.S.C. § 706(2), plaintiffs must identify a final agency action upon which the claim is based. 5 U.S.C. § 704. To be "final," an agency action "must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (internal quotation marks and citation omitted). It must also be an action "by which rights or obligations have been determined, or from which legal consequences will flow." *Id.* at 178 (internal quotation marks omitted).

[5] The Secretary of Agriculture proposed the boundary description in 1978 and at the same time initiated a public notice and comment process. Three years later, in 1981, the Forest Service officially published the boundary description. The 1981 publication constituted a final agency action because it "mark[ed] the consummation of the agency's decisionmaking process" and was an action "from which legal consequences" flowed. *Id.* It seems unremarkable to hold that, as a result, any claim challenging the decision fixing the boundary description must have been brought by 1987.

[6] Plaintiffs contend, appearances notwithstanding, that publication of the boundary description did not start the statute of limitations on their boundary claim. Neither of their arguments is persuasive. First, they argue that the Forest Service failed to provide adequate notice of the 1981 boundary description because the description was not published in the Federal Register. Our disagreement with the premise of plaintiffs' argument leads us to reject their conclusion. The Forest Service explained that on account of cost it had decided not to publish the *entire* boundary description in the Federal Register, but it did publish notice that the boundary description was available for review and could be found at a number of different locations. 46 Fed. Reg. at 34,611 (explaining that because it would cost $18,000, the Forest Service declined to publish the 61 pages of legal description and 31 map sheets in the Federal Register "[i]n the interests of economy"). This

1410   HELLS CANYON PRESERVATION COUNCIL v. USFS

was enough to place the interested public—including, of course, plaintiffs—on constructive notice of the boundary description's contents, thereby starting the statute of limitations. *See Shiny Rock Mining Corp. v. United States*, 906 F.2d 1362, 1364 (9th Cir. 1990) ("Actual knowledge of government action . . . is not required for a statutory period to commence. Publication in the Federal Register is legally sufficient notice to all interested or affected persons regardless of actual knowledge or hardship resulting from ignorance." (internal quotation marks omitted)).

Second, plaintiffs attempt to avoid the statute of limitations by claiming that they are not challenging the boundary description published in 1981, but rather a 2002 re-interpretation of it. Specifically, plaintiffs believe that "prior to 2002, [the Forest Service] had never interpreted the Wilderness boundary in the Lord Flat area to be anything other than the hydrologic divide formed by Summit Ridge." It was only in 2002, plaintiffs maintain, that the Forest Service first suggested in meetings with HCPC that the Hells Canyon boundary was the eastern rim of Summit Ridge, and that the rim was not always synonymous with the hydrologic divide.

**[7]** HCPC's argument is simply not consistent with the record. Despite HCPC's assertions, the original boundary description never indicated that the boundary of Hell Canyon Wilderness would always fall along the hydrologic divide. Indeed, there is consistent evidence to the contrary. The 1978 public notice proposing the boundary explained that "[t]he established Hells Canyon Wilderness boundary has been located on the most identifiable feature of the canyon rim. In some cases this is the rim and in other cases it is the crest of a hill." The final boundary description, published in 1981, sometimes identifies the boundary as the "hydrologic divide," and sometimes as the "rim." And, the Forest Service's 1992 Decision Memo describes the western boundary of Hells Canyon as "the canyon rim."[4] It was therefore apparent, long

---

[4] The 1994 surveyor's report also noted that "these terms"—hydrologic divide and rim—"are mutually exclusive." Although it is not clear that the

before 2002, that the hydrologic divide did not always establish the western boundary of the Hells Canyon Wilderness. Plaintiffs' challenge to the boundary description is barred by the statute of limitations.

C

Plaintiffs' last claim is that portions of the Trail are currently located within the Hells Canyon Wilderness area, and that the Forest Service's refusal to close the Lord Flat Trail to motorized use is an ongoing failure to act, remediable as "agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). The district court dismissed plaintiffs' claim as time-barred, ruling that plaintiffs' claim accrued in 1981, upon publication of the availability of the boundary description in the Federal Register or, alternatively, in 1994, when HCPC filed a suit with a similar claim. We think the timeliness of plaintiffs' claim is beside the point. Because plaintiffs have not identified "an ongoing failure to act," plaintiffs have simply failed to state a claim under § 706(1) of the APA.

[8] Section 706(1) of the APA grants federal courts the power to "compel agency action unlawfully withheld or unreasonably delayed." This provision serves important interests, but does not give us license to "compel agency action" whenever the agency is withholding or delaying an action we think it should take. Instead, our ability to "compel agency action" is carefully circumscribed to situations where an agency has ignored a specific legislative command. In *Norton v. Southern Utah Wilderness Alliance* ("*SUWA*"), 542 U.S. 55 (2004), the Supreme Court explained the two primary constraints on our review under § 706(1). First, the Court held

---

report was public, it confirms the Forest Service's understanding that the boundary of Hells Canyon Wilderness was not defined exclusively by the hydrologic divide.

1412    HELLS CANYON PRESERVATION COUNCIL v. USFS

that judicial review of actions alleged to be unlawfully withheld or unreasonably delayed extends only to "discrete" actions, such as rules, orders, licenses, sanctions, and relief. *Id.* at 62-63; *see* 5 U.S.C. § 551(13) (defining "agency action"); *see also SUWA*, 542 U.S. at 63 (offering as examples of "discrete" agency action "the failure to promulgate a rule or take some decision by a statutory deadline"). Second, the Court held that the purportedly withheld action must not only be "discrete," but also "legally *required*" —in the sense that the agency's legal obligation is so clearly set forth that it could traditionally have been enforced through a writ of mandamus. *SUWA*, 542 U.S. at 63. According to the Court, limiting judicial review to actions that are legally required "rules out judicial direction of even discrete agency action that is not demanded by law." *Id.* at 65. In sum, the Court concluded, "a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Id.* at 64.

[9] Plaintiffs allege that the Forest Service has failed to take the "discrete" act of prohibiting the use of motorized vehicles in wilderness areas, an act the statute plainly requires. *See* 16 U.S.C. § 1133(c) ("[T]here shall be no . . . motor vehicles . . . within any such [wilderness] area."). However, although plaintiffs may not approve of the way it has done so, the Forest Service has been carrying out this statutory responsibility since at least 1981, when it first defined the wilderness boundary. The Service's attention to its obligation under § 1133 was manifested again in 1989 when, after it determined that a small portion of the Lord Flat Trail crossed into the Hells Canyon wilderness boundary, it promptly took steps to remedy the situation. It responded first by closing the entire Trail to motorized vehicle use and then by relocating the offending portion of the Trail outside the boundary. The Forest Service issued a public Decision Memo explaining its decision and the actions it had taken. The Memo explained the Forest Service's determination that this plan was consistent with the Hells Canyon Act and the Hells Canyon Area

Case 3:02-cv-01138-HA Document 110 Filed 01/25/10 Page 15 of 20
Case: 07-35456 01/25/2010 Page: 15 of 20 ID: 7205895 DktEntry: 39-1

Comprehensive Management Plan, and briefly described the Lord Flat Trail's location in relation to the wilderness boundary.

**[10]** Allowing plaintiffs' claim to proceed would invite us to compel the Forest Service to do something—adjust the western boundary to fit HCPC's preference—not clearly mandated in the Act. Although, as mentioned above, the Hells Canyon Act and the Wilderness Act require the Forest Service to establish the wilderness area boundary and to prohibit unauthorized vehicles within that area, the Forest Service has done precisely that. Nothing in either act requires the Forest Service to use any particular topographical feature as the boundary. *See SUWA*, 542 U.S. at 65 ("[W]hen an agency is compelled by law to act within a certain time period, but the manner of its action is left to the agency's discretion, a court can compel the agency to act, but has no power to specify what the action must be."). Had the Forest Service failed to establish a boundary at all, plaintiffs might have a case for § 706(1) review, but we have no basis for compelling the Forest Service to adopt HCPC's preferred boundary. *Cf. Wilderness Soc'y v. Norton*, 434 F.3d 584, 588-89 (D.C. Cir. 2006) (holding that § 706 relief is available, notwithstanding 28 U.S.C. § 2401(a), where the agency ignored a statutory deadline). Because plaintiffs have not identified a "*discrete* agency action that [the Forest Service] is *required to take*," they have failed to state a claim under § 706(1).[5] *See SUWA*, 542 U.S. at 64.

[5]According to the dissent, plaintiffs are not asking "that the boundary description be altered or adjusted in any way"; instead, they seek precisely what the statute requires: "an order requiring the Forest Service prospectively to prohibit the use of motorized vehicles within the wilderness area." Diss. op. at 1418. Thus, the dissent maintains, the court need not order the Forest Service to adopt plaintiffs' preferred boundary. All that is required is to remand to the district court to determine whether the Lord Flat Trail intersects "the boundary description exactly as written." Diss. op. at 1417.

Case 3:02-cv-01138-HA   Document 110   Filed 01/25/10   Page 16 of 20
Case: 07-35456   01/25/2010   Page: 16 of 20   ID: 7205895   DktEntry: 39-1

1414    HELLS CANYON PRESERVATION COUNCIL v. USFS

HCPC's reliance on § 706(1) is an attempt to end run around an insurmountable problem: HCPC's argument is better phrased as a claim that the Forest Service's boundary determination was "arbitrary and capricious." But that claim —based on § 706(2)—is barred by the statute of limitations. *See* 28 U.S.C. § 2401(a). Permitting plaintiffs' § 706(2) claim to go forward under the guise of a § 706(1) claim would undermine the important interests served by statutes of limitations, including evidence preservation, repose, and finality. *See Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 554 (1974) ("[S]tatutory limitation periods are designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared." (internal quotation marks omitted)).

Over a three-year period, between 1978 and 1981, the Forest Service considered the evidence, consulted the controlling statutes, and then acted to comply with the Wilderness Act by publishing the boundary description. From that time, plaintiffs had six years in which to air their disagreement. They did not. We see no reason to entertain their attempt to revive their disagreement by labeling the Forest Service's actions as an ongoing failure to act.

---

We respectfully disagree. Plaintiffs are not merely asking the court to reiterate the statutory language; they are asking the court to order the Forest Service to prevent motorized vehicle use on the Lord Flat Trail. And, contrary to the dissent's contention, plaintiffs are not basing their claim on the "boundary description exactly as written." Indeed, as plaintiffs acknowledge, the boundary description itself "does not show the location of the Lord Flat Trail relative to the wilderness boundary." Instead, plaintiffs base their claim on *their own* "conten[tion that] Congress intended the wilderness boundary to be along the highest, most prominent point on the Hells Canyon rim, which is the hydrologic divide . . . ." (As was explained above, that position is inconsistent with the record.) Accordingly, to provide plaintiffs with the relief they seek, we would have to order the Forest Service to adopt plaintiffs' preferred boundary. This the statute does not require.

Case 3:02-cv-01138-HA   Document 110   Filed 01/25/10   Page 17 of 20
Case: 07-35456    01/25/2010    Page: 17 of 20    ID: 7205895    DktEntry: 39-1

Hells Canyon Preservation Council v. USFS     1415

III

The judgment of the district court is AFFIRMED.

---

GRABER, Circuit Judge, concurring in part and dissenting in part:

I concur in the majority's analysis of the first two claims. Plaintiffs do not have standing to challenge the Forest Service's failure to retain the original map of the Hells Canyon Wilderness area. Maj. op. Part II-A. And Plaintiffs' claim that the boundary description is arbitrary and capricious is barred by the six-year statute of limitations. Maj. op. Part II-B. I respectfully dissent, however, from the majority's analysis of the third claim. Maj. op. Part II-C.

Plaintiffs assert that portions of the Lord Flat Road[1] are located within the Hells Canyon Wilderness area; that the Forest Service is under a continuing obligation pursuant to the Wilderness Act, 16 U.S.C. §§ 1131-1136, to close those portions of the road to motorized vehicles; and that the Forest Service has refused to do so. In my view, Plaintiffs have asserted a viable claim to "compel agency action unlawfully withheld" under 5 U.S.C. § 706(1).

It cannot seriously be disputed that the Forest Service must prohibit the use of motor vehicles within the Wilderness area. *See* 16 U.S.C. § 1133(c) ("[T]here shall be no . . . use of motor vehicles . . . within any such [wilderness] area [subject to certain exceptions not applicable here]."); *id.* § 460gg-1(b) ("The [Hells Canyon Wilderness] shall be administered by the Secretary [of Agriculture] in accordance with the provisions of the Wilderness Act . . . ."). And it is undisputed that the

---

[1] The Lord Flat Road is also known as the Lord Flat Trail. I follow the usage selected by the district court and the United States Forest Service.

1416    HELLS CANYON PRESERVATION COUNCIL v. USFS

Forest Service has not closed the relevant portions of the Lord Flat Road to motor vehicles. The crux of this case, then, is whether the relevant portions of the road are located within the Wilderness area. There has been no determination—by the district court or by the majority—on that crucial question, which is a mixed question of fact and law. Instead, the majority holds that, *even if the road is located within the Wilderness area*, Plaintiffs cannot state a "failure to act" claim under 5 U.S.C. § 706(1). In effect, the majority holds that the Forest Service's (alleged) plain violation of the Wilderness Act is not subject to judicial review. I disagree.

"[A] claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004). In my view, the statutory provisions here plainly, directly, discretely, and concretely require the Forest Service to prohibit the use of motorized vehicles within the Hells Canyon Wilderness area. That specific legal requirement is a far cry from the broad and general statutory mandates that the Supreme Court held are not subject to judicial enforcement under § 706(1). *See, e.g.*, *id.* at 67 ("To take just a few examples [of actions not subject to judicial enforcement under § 706(1)] from federal resources management, a plaintiff might allege that the Secretary had failed to 'manage wild free-roaming horses and burros in a manner that is designed to achieve and maintain a thriving natural ecological balance,' or to 'manage the [New Orleans Jazz National] [H]istorical [P]ark in such a manner as will preserve and perpetuate knowledge and understanding of the history of jazz,' or to 'manage the [Steens Mountain] Cooperative Management and Protection Area for the benefit of present and future generations.' " (alterations in original) (quoting various federal statutes)). In my view, if Plaintiffs are correct that the disputed portions of the road do, in fact,

Case 3:02-cv-01138-HA   Document 110   Filed 01/25/10   Page 19 of 20
Case: 07-35456   01/25/2010   Page: 19 of 20   ID: 7205895   DktEntry: 39-1

Hells Canyon Preservation Council v. USFS    1417

lie within the Wilderness area, then Plaintiffs have stated a cognizable claim under § 706(1).[2]

The majority disagrees for two reasons. First, the majority holds that the Forest Service actually has carried out its statutory obligations because, for example, it closed the road to motorized vehicles and relocated a portion of the road in 1989. The majority appears to hold that, so long as the Forest Service has met its mandatory statutory obligations in some location, at some earlier point in time, its failure to meet those obligations in other locations, at other times, is forever shielded from judicial review. I find no support for that proposition in law or logic, and the majority provides none.

Second, the majority holds that "allowing plaintiffs' claim to proceed would invite us to compel the Forest Service to do something—adjust the western boundary to fit [Plaintiffs'] preference—not clearly mandated in the Act." Maj. op. at 1413. To respond to this argument, it is important to clarify the nature of Plaintiffs' claim. To the extent that Plaintiffs contend that the boundary description must be altered or adjusted in any way, I agree completely with the majority that that claim is not cognizable. But I understand Plaintiffs to assert that, even accepting the boundary description exactly as written, the road lies within the Wilderness area. In that regard, the majority's rejection of Plaintiffs' claim simply does not apply. Plaintiffs are not asking the court "to use [a] particular topographical feature as the boundary" or to "com-

---

[2]The district court held that this claim is barred by the statute of limitations. The majority holds that "timeliness of plaintiffs' claim is beside the point," maj. op. at 1411, and does not reach the statute of limitations issue. For that reason, I limit my analysis of that issue to stating that I would hold that Plaintiffs assert a continuing violation which is not barred by the statute of limitations. *See Airweld, Inc. v. Airco, Inc.*, 742 F.2d 1184, 1190 (9th Cir. 1984) ("The effect of a continuing violation is to restart the statute of limitations."); *see also Wilderness Soc'y v. Norton*, 434 F.3d 584, 588 (D.C. Cir. 2006) (stating, in dictum, that this type of claim would not be barred by the statute of limitations).

Case 3:02-cv-01138-HA Document 110 Filed 01/25/10 Page 20 of 20
Case: 07-35456 01/25/2010 Page: 20 of 20 ID: 7205895 DktEntry: 39-1

1418    HELLS CANYON PRESERVATION COUNCIL v. USFS

pel[ ] the Forest Service to adopt [Plaintiffs'] preferred boundary." Maj. op. at 1413. In the third claim, Plaintiffs simply are asking the courts to compel the Forest Service to prohibit the use of motorized vehicles within the Wilderness area as described by the boundary description, something specifically and unequivocally mandated by statute.

For similar reasons, Plaintiffs' claim is not an attempted "end run" around anything. Maj op. at 1414. As discussed above, I agree with the majority that Plaintiffs' claim that the 1978 boundary description was arbitrary and capricious when promulgated is barred by the statute of limitations. But Plaintiffs' claim here does not concern *past* events; it concerns the Forest Service's *present and ongoing* obligation to prohibit motorized vehicles in the Wilderness area. Plaintiffs are barred by the statute of limitations from seeking damages from an alleged failure to prohibit motorized vehicles far in the past. But Plaintiffs seek *prospective* remedies, including an order requiring the Forest Service prospectively to prohibit the use of motorized vehicles within the Wilderness area.

In conclusion, I would reverse the district court's dismissal of the third claim and remand for a determination of *whether* certain portions of the Lord Flat Road actually lie within the Wilderness area. The Forest Service ultimately might prevail on the merits of that determination. But the majority's holding that such a determination is unavailable unduly restricts—if not eviscerates—judicial review under § 706(1) for an agency's failure to act. Accordingly, I respectfully dissent in part.